IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GEORGE BETRAND, Plaintiff, | : : : : |
| v. | : No. 4:CV-07-0859 : : (Judge McClure) |
| DEPARTMENT OF CORRECTIONS, et al., Defendants. | : : : : : |

**MEMORANDUM**

October 6, 2009

**I. Introduction**

This pro se civil rights action under 42 U.S.C. § 1983, Pa. C.S.A. § 6600, and the First, Eighth, and Fourteenth Amendments to the United States Constitution was initiated by plaintiff George Betrand in the Court of Common Pleas of Schuylkill County. On May 11, 2007, the action was removed to this Court. Plaintiff Betrand has named as defendants the Commonwealth of Pennsylvania Department of Corrections ("DOC"); Prison Health Services, Inc. ("PHS"), a corporation that provides medical services to the DOC; Robert Shannon, Superintendent at State Correctional Institution at Frackville ("SCI Frackville"); Health Care Administrator Barbara G. Malewski; B.L. Tritt, Assistant to the Superintendent; and Nurse Donna Jones.

## II. Procedural History

In his complaint, Betrand asserts that the above-named defendants violated his rights due to the manner in which his insulin shots for Type II Diabetes were administered at SCI Frackville. (Rec. Doc. No. 6 at 16-18).

After the matter was removed to federal court, defendant PHS filed a motion to dismiss on May 23, 2007. (Rec. Doc. No. 3). On June 14, 2007, PHS filed a brief in support of its motion to dismiss. (Rec. Doc. No. 4). The DOC, Shannon, Malewski, Tritt, and Jones ("Corrections Defendants") filed a demand for a trial by jury and a motion to dismiss accompanied by a brief in support thereof on July 10, 2007. (Rec. Doc. Nos. 8-10). Plaintiff Betrand responded in opposition to the Corrections Defendants' motion to dismiss. (Rec. Doc. Nos. 12-13). However, Betrand did not respond to PHS's motion to dismiss. (Rec. Doc. No. 15 at 1-2).

On March 18, 2008, this Court granted in part and dismissed in part the Corrections Defendants' motion to dismiss. (Rec. Doc. No. 14). We allowed the complaint against the Corrections Defendants to proceed concerning "any claim that they were responsible for the implementation of a policy or custom which violated Plaintiff's right to privacy." (Id. at 14). In addition, we also held in abeyance the question as to whether we would exercise supplemental jurisdiction over Betrand's surviving state law claims against defendants Jones and Malewski.

2

Id.

On March 20, 2008, this Court granted in part and dismissed in part PHS's motion to dismiss. (Rec. Doc. No. 15). In this Court's order, we allowed to proceed Betrand's "claim that [PHS] implemented a policy or custom which violated Plaintiff's right to privacy." Id. at 12-13. In addition, we held in abeyance the question as to whether we would exercise supplemental jurisdiction over Betrand's state law claims. Id. at 13.

On April 8, 2008, PHS filed an answer to Betrand's complaint. (Rec. Doc. No. 16). After granting the Corrections Defendants' motion for an enlargement of time (see Rec. Doc. No. 18), the Corrections Defendants filed their answer on May 2, 2008 (Rec. Doc. No. 19).

On May 16, 2008, this Court granted Corrections Defendant's motion to depose Betrand. (Rec. Doc. No. 22).

The Corrections Defendants filed a motion for summary judgment on February 6, 2009. (Rec. Doc. No. 25). With their motion, the Corrections Defendants also filed a brief in support and a statement of facts, pursuant to Local Rule 56.1. (Rec. Doc. Nos. 26 and 27). After this Court granted PHS an extension of time, PHS filed a motion for summary judgment on February 24, 2009. (Rec. Doc. No. 31). With its motion, PHS also filed a brief in support and a statement of

facts, pursuant to Local Rule 56.1. (Rec. Doc. Nos. 32 and 33).

Betrand, on March 27, 2009, filed an opposition brief. (Rec. Doc. No. 36). However, Betrand did not file a separate statement of facts in response to defendant PHS's statement of facts as required by Local Rule 56.1.

## III. Factual Background

Taken in a light most favorable to the non-moving party, plaintiff Betrand, the salient facts are as follows.[1] Plaintiff George Betrand has been an inmate at SCI Frackville since 2004. In addition, Betrand has Type II diabetes, which he

---

[1] Pursuant to M.D. Pa. L.R. 56.1, the moving party is required to file a statement of material facts in support of the motion for summary judgment, and the non-moving party is required to file a responsive statement of facts. Both parties are required to "include references to the parts of the record that support the statements." Corrections Defendants have filed the requisite statement of facts, see Rec. Doc. No. 27. Plaintiff was required to file an opposition to the Corrections Defendants' motion by February 23, 2009; when plaintiff failed to do so, this Court issued an order on March 4, 2009, requiring that plaintiff file his opposition to the Corrections Defendants' motion by March 19, 2009. While plaintiff did eventually file his opposition, and his opposition documents were dated March 19, 2009, the documents were in fact filed on March 27, 2009. See Rec. Doc. Nos. 35 and 36. In light of our March 4 order, we will deem the Corrections Defendants' motion for summary judgment as unopposed. (See Rec. Doc. No. 34). However, even if plaintiff's responsive documents were timely, Plaintiff's response to the Correctional Defendants' statement of facts is "replete with unsupported factual assertions"; therefore, even if plaintiff's response were timely, we would adopt all of Corrections Defendants' facts not clearly disputed by plaintiff with adequate references to the record. See United States ex rel. Stephen Paranich, D.C. v. Deborah Sorgnard, et. al., 286 F. Supp. 2d 445, 447 n.3 (M.D. Pa. 2003), aff'd, 396 F.3d 326 (3d Cir. 2005).

was diagnosed with in 2002. Prior to 2007, when Betrand began taking medication in pill form for his diabetes, Betrand was given two insulin shots a day. Beginning on or about August 16, 2005, these shots were administered in the hospital lobby at SCI Frackville. (Rec. Doc. No. 27 at 2, 8).

At all times relevant to the complaint, defendant Shannon was the Superintendent at SCI Frackville, and defendant Malewiski was the Corrections Health Care Administrator at the facility. As the Health Care Administrator, Malewski's duties included "planning, organizing, directing and managing the health care services program" and also coordinating the work between medical staff and contracted medical vendors. See id. at 12. Defendant Tritt worked at SCI Frackville as the Classification Program Manager; it was her job to review appeals from misconduct hearings as well as to respond to inmate grievances. Id. at 10. Defendant Jones, at all times relevant to the complaint, worked as a nurse at SCI Frackville. Id. at 1.

The hospital lobby at SCI Frackville contained a desk, at which corrections officers would stand or sit to maintain security, as well benches for inmates to sit on while waiting for their insulin shots. Id. at 2, 8. During the times relevant to Betrand's complaint, insulin shots were administered by nurses at the desk in the hospital lobby at SCI Frackville. Typically, an inmate would have to wait from

5

between fifteen and twenty minutes to receive an insulin shot. When administering the shots, the nurses would also check the inmates' blood sugar levels. Beginning some time in 2006, insulin shots were administered to inmates in a private treatment room in the hospital. Id. at 2.

In 2005, Bertrand filed two request slips with Nurse Jones in regards to the administration of insulin shots. Id. at 3. In a request slip dated November 1, 2005, Betrand alleged that the system for administering insulin shots violated his medical privacy rights. In a subsequent request slip, dated November 28, 2005, Betrand again voiced his concerns about the prison's administration of insulin to diabetic inmates. Id. at 3-4. On November 13, 2005, Betrand filed a grievance, Grievance No. 135510[2], with the prison. Betrand again alleged that the provision of insulin shots in the manner utilized by SCI Frackville violated his medical privacy rights. Defendant Tritt, then the Classification Program Manager at SCI Frackville, denied the grievance. Id. at 4. Betrand appealed Tritt's decision to Superintendent Shannon, who denied Betrand's appeal. There is no evidence that an appeal for final review of a Grievance No. 135510 was filed with the Secretary's Office of

---

[2] Betrand filed a second grievance, Grievance No. 132473 in 2005. However, that grievance pertained not to the prison's administration of insulin shots, but instead to the inmate's property. In any case, Betrand did not appeal Grievance No. 132473 to the Secretary's Office of Inmate Grievances and Appeals for final review. Id. at 6.

6

Inmate Grievances and Appeals. Id. at 5.

### IV. Motion for Summary Judgment Standard of Review

Summary judgment is appropriate when 1) there are no material facts in dispute; and 2) one party is entitled to judgment as a matter of law. See Int'l Union, United Mine Workers of Am. v. Racho Trucking Co., 897 F.2d 1248, 1252 (3d Cir. 1990) (citing Fed. R. Civ. Pro. 56(c)).

A district court may properly grant a motion for summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those which might affect the outcome of the suit. Id.; Justofin v. Metropolitan Life Ins. Co., 372 F.3d 517, 521 (3d Cir. 2004).

Regardless of who bears the burden of persuasion at trial, the party moving for summary judgment has the burden to show an absence of genuine issues of material fact. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996) (citations omitted). To meet this burden when the moving party does not bear the burden of persuasion at trial, the moving party must show "'that the

evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial.'" Jalil v. Avdel Corp., 873 F.2d 701, 706 (3d Cir. 1989) (quoting Chippolini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d. Cir. 1987)); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). More simply put, a party moving for summary judgment who does not bear the burden of persuasion at trial is not required to negate the nonmovant's claim, but only point out a lack of evidence sufficient to support the nonmovant's claim. Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1991).

Once the moving party meets its burden of showing an absence of genuine issues of material fact, the nonmoving party must provide some evidence that an issue of material fact remains. Matushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party, however, cannot do so by merely offering general denials, vague allegations, or conclusory statements; rather, the party must point to specific evidence in the record that creates a genuine issue as to a material fact. Celotex, 477 U.S. at 32; Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).

## V. Discussion

### 1. Betrand's Federal Law Claims

Corrections Defendants make two arguments to support their claim that they are entitled to summary judgment on Betrand's federal law claims. First, Corrections Defendants argue that Betrand should be barred from continuing with his claim before this Court because he has failed to exhaust his administrative remedies. Second, Corrections Defendants argue that summary judgment is also proper because they are entitled to qualified immunity.

### A. Failure to Exhaust Administrative Remedies

With regard to actions brought under either the United States Constitution or any federal law, Congress has required that:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal Law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The Supreme Court has noted that "exhaustion is now required for all 'actions . . . brought with respect to prison conditions,' whether under § 1983 or 'any other Federal law.'" Porter v. Nussle, 534 U.S. 516, 525 (2002) (quoting 42 U.S.C. Sec. 1997e(a)). In addition, "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory. Woodford v. Ngo, 548

U.S. 81, 85 (2006) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).  A prisoner must exhaust all remedies that are available.  See id.

At the time of the allegations contained in Betrand's complaint, the DOC had a three-level "Inmate Grievance System."  (Rec. Doc. No. 27 at 5).  First, a prisoner with a complaint or grievance was entitled to file an initial review.  Second, a prisoner was entitled to file an appeal with a facility manager, such as a prison's superintendent.  Third, a prisoner was entitled to file a final appeal with the Secretary's Office of Inmate Grievances and Appeals.  Id. at 5-6.

Betrand has failed to exhaust the remedies made available to him pursuant to § 1997e(a).  Betrand filed an initial grievance on November 13, 2005, which was denied.  Next, Betrand filed an appeal from the initial review with SCI Frackville Superintendent Shannon, but this appeal was denied.  There is no evidence that Betrand filed the required second appeal with the Office of Inmate Grievances and Appeals.  See id. at 5.  Therefore, Betrand has failed to exhaust the administrative remedies available to him in contravention with those requirements found in § 1997e(a).

In light of the above, summary judgment in favor of Correctional Defendants as to all of Betrand's constitutional and federal law claims is granted.

## B. Corrections Defendants' Entitlement to Qualified Immunity

Saucier v. Katz has mandated a two-step analysis concerning qualified immunity. First, a court must decide whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001) Second, a court must decide whether that right was clearly established. Id. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202.

Earlier this year, the Supreme Court held that Saucier's "rigid order of battle" is not a mandatory requirement. Pearson v. Callahan, 129 S.Ct. 808, 817 (2009). Lower courts can use their discretion to decide which of the two prongs to consider first. Id. at 818.

Betrand claims that the Corrections Defendants violated his medical privacy rights under the First, Eighth, and Fourteenth Amendments. The courts are to "accord substantial deference to the professional judgment of prison administrators . . . ." Overton v. Bazzetta, 539 U.S. 126, 132 (2003). A prison regulation that affects a constitutional right will be "valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). In determining whether this reasonable relationship exists, we must undertake a two part test.

First we must decide whether there exists "'a valid, rational connection between the prison regulation and the legitimate interest put forth to justify it.'" Fontroy v. Beard, 559 F.3d 173, 178 (3d Cir. 2009) (quoting Monroe v. Beard, 536 F.3d 198, 207 (3d Cir. 2008)). Second, if such a connection does in fact exist, we must decide (1) whether there is an alternative means for prisoners to exercise the right, (2) what burden would be imposed upon prison resources if the right were accommodated, and (3) whether alternatives to the regulation exist "that fully accommodate the inmate's rights at de minimis cost to valid penological objectives." Fontroy, 559 F.3d at 178 (3d Cir. 2009) (citing Monroe, 536 F.3d at 207).

First, a rational connection between the prison's decision to administer the insulin shots in the hospital lobby and a legitimate penological interest clearly exists. By conducting insulin shots in the hospital lobby, prison administrators were able to provide preventive and necessary healthcare to inmates while also assuring the safety and security of healthcare workers, inmates, and others at SCI Frackville.

In addition, the rest of the factors important in a Turner analysis also weigh in favor of finding that the insulin administration policy at issue in the case was reasonably related to a legitimate penological interest. First, we need not address

12

whether alternative means existed by which plaintiff could maintain his medical privacy, as his right to privacy was not violated by the provision of insulin shots in the hospital lobby. Second, even if the right were accommodated, prison officials reasonably could have believed that such an accommodation would impose a significant burden on prison resources, taking up more time, utilizing more staff, and increasing costs. Third, prison officials reasonably could have believed that to move the location for the insulin shots once again, or to institute some other alternative, would be to impose more than a de minimis cost to the prison's objectives of providing an important service to inmates in a safe and secure manner. Therefore, we conclude that, because the prison policy was reasonably related to legitimate penological interests, the Corrections Defendants did not violate Betrand's constitutionally protected rights.

Even if Betrand's medical privacy rights were violated by the prison's policy concerning the insulin lines, the boundaries of that right in this case were not clearly established. As the Corrections Defendants have noted, there is no United States Supreme Court or Third Circuit precedent that is controlling. There are also no controlling opinions by district courts. No prison official instituting a policy like the one at issue in this case could have reasonably foreseen that such a policy was unconstitutional, let alone that the boundaries of the right violated were clearly

13

established. After all, no prisoners complained when the policy was changed so as to administer the insulin shots in the hospital lobby, and it was Nurse Jones' understanding that similar procedures were used by other prisons. (Rec. Doc. No. 27 at 8, 9).

The Supreme Court has noted that qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). As we find that "the law did not put [Corrections Defendants] on notice that [their] conduct would be clearly unlawful," Saucier, 533 U.S. at 201, we conclude that Corrections Defendants are entitled to qualified immunity and that summary judgment is appropriate.

## 2. Betrand's Pendent State Law Claims

Pursuant to 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a claim" if, inter alia, "the district court has dismissed all claims over which it has original jurisdiction . . . ." This decision concerning the exercise of supplemental jurisdiction is left to the sound discretion of the district court. See Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995) (citing United Mine Workers v. Gibbs, 383 U.S. 715, 726-27 (1966)). In addition, when the claim is dismissed by the district court prior to trial pursuant to a provision such as § 1367(c)(3), "the district court must decline to decide the

pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Id. (citing Lovell Mfg. v. Export-Import Bank of the United States, 843 F.2d 725, 732 (3d Cir. 1988); Growth Horizons, Inc. v. Delaware County, 983 F.2d 1277, 1284 (3d Cir. 1993)). The Third Circuit has also noted that a district court should decline jurisdiction over such claims "where the federal claims are no longer viable, absent extraordinary circumstances." Shaffer v. Board of Sch. Directors of Albert Gallatin Area Sch. Dist., 730 F.2d 910, 912 (3d Cir. 1984) (citing Weaver v. Marine Bank, 683 F.2d 744, 746 (3d Cir. 1982) (internal quotations omitted)).

In the instant case, neither judicial economy, convenience, nor fairness to the parties militates in favor of this Court's exercising pendent jurisdiction over Betrand's remaining state law claims. While a number of discovery motions have been filed, trial has not been scheduled. In addition, the convenience of the parties would not be compromised by a dismissal and remand of the state law claims to the Court of Common Pleas of Schuylkill County. The principle of comity in fact supports the conclusion that a state court should decide Betrand's state law claims. BLACK'S LAW DICTIONARY, 303-304 (Bryan A. Garner, ed., West Group 2009). Finally, Betrand has not made any showing that there are extraordinary circumstances making the exercise of jurisdiction over his remaining state law

15

claims by this Court proper.

In light of the forgoing, we will dismiss Betrand's remaining state law claims and remand such claims to the Court of Common Pleas of Schuylkill County.

**VI. Conclusion**

For all of the foregoing reasons, Corrections Defendants' Motion for Summary Judgment will be granted as to Betrand's federal law claims, and we will dismiss and remand his remaining state law claims to the Court of Common Pleas of Schuylkill County.

    s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| GEORGE BETRAND | : | |
|---|---|---|
| | : | |
| Plaintiff, | : | |
| | : | No. 4:CV-07-0859 |
| v. | : | |
| | : | (Judge McClure) |
| DEPARTMENT OF | : | |
| CORRECTIONS, et al., | : | |
| | : | |
| Defendants. | : | |

ORDER

October 6, 2009

In accordance with the accompanying Memorandum,

**IT IS HEREBY ORDERED THAT:**

1. The Motion for Summary Judgment of defendants Shannon, Malewski, Tritt, Jones, and the Department of Corrections is GRANTED with respect to all of plaintiff Betrand's claims except his state law claims. (Rec. Doc. No. 25).

2. Plaintiff's remaining state law claims are DISMISSED and REMANDED, without prejudice, to the Court of Common Pleas of Schuylkill County such that plaintiff may pursue his claims in state court in accordance with 28 U.S.C. § 1367(d).

3. Final judgment is entered in favor of defendants Shannon,

Malewski, Tritt, Jones, and the Department of Corrections and against plaintiff.


                        <u>  s/ James F. McClure, Jr.   </u>
                        James F. McClure, Jr.
                        United States District Judge